UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

KIMBERLY GREENBERG,

                              Plaintiff,

        v.

VISITING NURSE SERVICES IN
WESTCHESTER, INC. *and* ANDREA
WINCHESTER,

                              Defendants.

No. 23-CV-4252 (KMK)

<u>OPINION & ORDER</u>

<u>Appearances</u>:

Kristina S. Heuser, Esq.
Kristina S. Heuser, P.C.
Locust Valley, NY
*Counsel for Plaintiff*

Rebecca M. McCloskey, Esq.
Jill Chow, Esq.
Jackson Lewis P.C.
White Plains, NY
*Counsel for Defendants*

KENNETH M. KARAS, United States District Judge:

        Plaintiff Kimberly Greenberg ("Plaintiff") brings this Action against Visiting Nurse

Services in Westchester, Inc. ("VNSW") and Andrea Winchester ("Winchester," and together

with VNSW, "Defendants"), alleging that VNSW violated Title VII of the Civil Rights Act of

1964, 42 U.S.C. § 2000e ("Title VII"), as well as the New York State Human Rights Law

("NYSHRL"), when it denied her a religious exemption to a mandatory COVID-19 vaccination

policy.  (*See generally* Compl. (Dkt. No. 1).)[1]  Plaintiff also brings an NYSHRL aiding-and-abetting claim against Winchester.  (*Id.* ¶¶ 33–35.)  Before the Court is Defendants' Motion To Dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) (the "Motion").  (*See* Not. of Mot. (Dkt. No. 15).)  For the reasons that follow, the Court grants Defendants' Motion.

## I.  Background

### A.  Factual Background

The following facts are drawn from the Complaint, as well as the exhibits attached thereto and referenced therein.  (*See generally* Compl.; Compl. Ex. A ("Accommodation Letter") (Dkt. No. 1-1); Compl. Ex. B ("VNSW Denial Letter") (Dkt. No. 1-2); Compl. Ex. C ("Right-to-Sue Letter") (Dkt. No. 1-3).)[2]  The facts alleged are assumed true for the purpose of resolving the instant Motion.  *See Div. 1181 Amalgamated Transit Union-N.Y. Emps. Pension Fund v. N.Y.C. Dep't of Educ.*, 9 F.4th 91, 94 (2d Cir. 2021) (per curiam).

#### 1.  The Parties

VNSW operates as a "provider of home health care services."  (Compl. ¶ 5.)  Plaintiff was a VNSW employee for a total of eight years.  (*See* Compl. ¶ 7.)  As of October 2021, Plaintiff held the full-time position of "Nurse Auditor."  (*Id.* ¶¶ 8, 20.)  As alleged, Plaintiff's role as a Nurse Auditor consisted "entirely of office work."  (*Id.* ¶ 9.)  In particular, Plaintiff "audited medical charts for state and agency compliance and communicated to staff on charting

---

[1] Unless otherwise noted, the Court cites to the ECF-stamped page number in the upper-right corner of each page.

[2] To be clear, "[i]n deciding a Rule 12(b)(6) motion" the Court may properly consider, inter alia, "the facts alleged in the pleadings, [as well as] documents attached as exhibits or incorporated by reference in the pleadings[.]"  *Hu v. City of New York*, 927 F.3d 81, 88 (2d Cir. 2019) (citation omitted); *accord Bellin v. Zucker*, 6 F.4th 463, 473 (2d Cir. 2021).

discrepancies via email and telephone." (*Id.*)[3]  In addition, Plaintiff has asserted that she was "involved in Education" at VNSW, in that she "educat[ed] current and new staff in OASIS, documentation compliance, and [] learning [VNSW's] new EMR HomeCare HomeBase (HCHB)[,] as well as in Forcura and Sophos." (Accommodation Letter 1 (noting that "[t]he support that [Plaintiff gave was] not limited to field staff but also extend[ed] to all office staff").) Further, Plaintiff has stated that she served on "department and agency committees," including as "the scribe" who prepared certain "committee and meeting minutes." (*Id.*)

When the events at issue in this case took place, Winchester was VNSW's Director of Human Resources. (*See id.* ¶ 6.)

### 2.  The COVID-19 Vaccine Mandate

In August 2021, the COVID-19 pandemic was "surging in New York, with daily positive cases up over 1000% over the course of six weeks." *Does 1–2 v. Hochul*, 632 F. Supp. 3d 120, 128 (E.D.N.Y. 2022) (citation omitted).[4]  Later that month, "New York's Department of Health adopted an emergency rule directing hospitals, nursing homes, hospices, adult care facilities, and other identified healthcare entities to 'continuously require' certain of their employees to be fully vaccinated against COVID-19." *We The Patriots USA, Inc. v. Hochul* ("*We The Patriots I*"), 17 F.4th 266, 274 (2d Cir.) (per curiam) (citing 10 N.Y.C.R.R. § 2.61), *clarified*, 17 F.4th 368 (2d Cir. 2021), *cert. denied sub nom. Dr. A. v. Hochul*, 142 S. Ct. 2569 (2022).  That rule ("the

---

[3] Plaintiff avers that "[a]t various times during the pandemic, [P]laintiff's position was exclusively remote.  In other words, [P]laintiff successfully performed all the functions of her job from her home." (Compl. ¶ 10.)

[4] "[T]he Court may take judicial notice of facts regarding COVID-19[,]" including related rules and regulations.  *Does 1–2*, 632 F. Supp. 3d at 127 n.1; *see also Algarin v. N.Y.C. Health + Hosps. Corp.*, 678 F. Supp. 3d 497, 502 n.4 (S.D.N.Y. 2023) (similar), *aff'd sub nom. Algarin v. N.Y.C. Health & Hosps. Corp.*, No. 23-1063, 2024 WL 1107481 (2d Cir. Mar. 14, 2024).

COVID-19 Vaccine Mandate" or "§ 2.61") applied to "those employees, staff members, and volunteers 'who engage in activities such that if they were infected with COVID-19, they could potentially expose other covered personnel, patients[,] or residents to the disease.'" *Id.* (quoting 10 N.Y.C.R.R. § 2.61(a)(2)).  It took effect on September 17, 2021 for "general hospitals" and nursing homes and on October 7, 2021 for all other "covered entities." *Id.*[5]  The COVID-19 Vaccine Mandate lacked a religious exemption but "d[id] not prohibit employers from providing religious objectors with accommodations." *Id.* at 275; *see Kane v. De Blasio*, 19 F.4th 152, 160 n.5 (2d Cir. 2021) (explaining that exemptions differ from accommodations because the former allows people to be entirely "not subject to" a given rule).  Put another way, "[§] 2.61, on its face, does not bar an employer from providing an employee with a reasonable accommodation *that removes the individual from the scope of the Rule*[;] [that is], it may be possible under [§ 2.61] for an employer to *accommodate*—not *exempt*—employees with religious objections, by employing them in a manner that removes them from the Rule's definition of 'personnel.'" *We the Patriots USA, Inc. v. Hochul* ("*We the Patriots II*"), 17 F.4th 368, 370 (2d Cir. 2021) (per curiam) (emphases in original) (quotation marks and citations omitted).

### 3.  Plaintiff's Request for a Religious Exemption

Pursuant to the COVID-19 Vaccine Mandate, VNSW required its employees to receive their first dose of a COVID-19 vaccine by no later than October 7, 2021.  (*See* Compl. ¶ 11.)  However, in light of her religious objection to receiving any vaccination, Plaintiff submitted a

---

[5] The Parties appear to agree that VNSW was a "covered entity" for purposes of the COVID-19 Vaccine Mandate.  *See We The Patriots I*, 17 F.4th at 296–97 (listing "certified home health agencies, . . . licensed home care service agencies, and limited licensed home care service agencies" as examples of covered entities (quoting 10 N.Y.C.R.R. § 2.61(a)(1)(ii))).  (*See also* Compl. ¶ 5 (alleging that VNSW is a "provider of home health care services").)

written request to VNSW—through Winchester—for a "[r]eligious [e]xemption" from the

COVID-19 Vaccine Mandate on October 4, 2021.  (*See id.* ¶ 12; Accommodation Letter 1.)

In her Accommodation Letter, Plaintiff specifically requested a "religious exemption"

based on her religious beliefs as a Messianic Jew.  (Accommodation Letter 1–2.)[6]  Plaintiff

explained her conviction that "all vaccination is disobedient to God and contradictory to faith in

God."  (*Id.* at 2.)  Although she had previously drawn a distinction between virus- and non-virus-

containing vaccines—the latter of which she had believed were "fine to take"—she asserted that

she had come to the conclusion that "it is not ok to take any and all vaccines" after learning "the

true contents of all vaccines."  (*Id.* (stating that this conclusion "helped me to see that my trust

must be with God, not in vaccines that are man-made").)  Additionally, after providing an in-

depth background regarding her faith, Plaintiff stated that "[v]accines contain blood cells and

blood components," including "cells derived from chicks cows, pigs[,] and monkeys[,]" as well

as "fetal cells from aborted fetuses" and "viruses and bacteria that pollute and poison the

bloodstream."  (*Id.* at 2–4 ("These [items] are all sinful to take into the body in any way.").)

Plaintiff further explained that, pursuant to her religious convictions, abortion is murder and that

getting a vaccination containing—or that otherwise "depended on"—fetal cells is a sin.  (*Id.* at

4–5.)  Moreover, Plaintiff noted that "[i]t is unholy, sinful, unclean, and disobedient to intake

another's blood/blood components into oneself," regardless of whether the source was "animal

or human."  (*Id.* at 5 ("The genetic and chemical make-up of the blood is not something that

should be altered or manipulated. . . . My blood is divine and holds divine life.  My blood is

healthy because I am made in the image of God and because he gives me divine immunity.").)

---

[6] In her Accommodation letter, Plaintiff explains that Messianic Jews are also known as
Jewish Christians.  (Accommodation Letter 2.)

Cutting to the heart of her religious objection to the COVID-19 Vaccine Mandate, Plaintiff explained that "[t]aking a vaccine is saying that I trust in man, not in God—this violates my faith and disobeys God's commandments to me." (*Id.*; *see also id.* at 6 ("I will have to appear before the judgment seat of God and answer for what was done to my body and what I have allowed or not allowed into my body. I cannot take vaccines—it is a betrayal of my faith; it is disobedient and sinful to my God.").)

Notably, the only accommodation requested in Plaintiff's Accommodation Letter was a complete exemption from receiving the COVID-19 vaccine. (*See generally id.*)

### 4. VNSW's Response and Plaintiff's Termination

Presumably after receiving Plaintiff's Accommodation Letter, Defendant, through Winchester, directed Plaintiff to work remotely for the week of October 8, 2021. (*See* Compl. ¶ 13.)[7] Winchester further "directed [P]laintiff to provide [VNSW] with a letter from a religious leader and documentation supporting her contention that the COVID-19 vaccine contains aborted fetal cells[,]" and also informed Plaintiff that VNSW "was waiting for the decision in [a pending federal lawsuit] before evaluating and making a determination on [her] request." (*Id.* ¶¶ 14, 16 (citing *A. v Hochul*, 567 F. Supp. 3d 362 (N.D.N.Y. 2021)); *see also* VNSW Denial Letter 1 (October 13, 2021 letter from Winchester to Plaintiff noting that VNSW had "asked [Plaintiff to] provide credible evidence supporting [her] claims" that "animal biological material and fetal cells are ingredients in COVID-19 vaccines").)

Ultimately, on October 13, 2021, Winchester called Plaintiff and informed her that her request for a religious accommodation was denied and that she was to be placed on administrative leave without pay effective October 14, 2021. (*See* Compl. ¶ 18; *see also* VNSW

---

[7] In the Complaint, Plaintiff generally refers to Winchester as VNSW's "agent." (*See, e.g.*, Compl. ¶¶ 6, 13–14, 16, 18.)

Denial Letter 1).  Winchester also sent Plaintiff a letter on VNSW's behalf, explaining that

"VNSW has not made any determinations regarding whether [Plaintiff's] belief [was] one that

[was] sincerely held under any applicable laws," but that Plaintiff had "failed to substantiate

[her] request with verifiable evidence that support[ed] [her] position."  (VNSW Denial Letter 1.)

Winchester's letter also noted that "the letter from your religious leader is not on church

letterhead, and appears to be from a close family member of a different faith than you have stated

in your original letter."  (*Id.*)  The letter concluded by indicating that Plaintiff would receive a

"five day[] unpaid leave of absence . . . to reconsider receiving the vaccination."  (*Id.* ("If we do

not receive proof of vaccination by [the end of Plaintiff's leave], your employment will be

terminated for failure to adhere to the vaccine mandate.").)

Plaintiff did not get the COVID-19 vaccine because, she claims, doing so would have

caused her to violate her sincerely held religious beliefs.  (Compl. ¶ 19.)  As a result, VNSW

terminated her employment on or around October 18, 2021.  (*Id.* ¶ 20.)  Plaintiff submitted an

"appeal letter" regarding her termination, but received no response.  (*Id.* ¶ 21.)

On May 2, 2022, Plaintiff formally filed a Charge of Discrimination against VNSW with

the Equal Employment Opportunity Commission ("EEOC").  (*Id.* ¶ 22.)  The EEOC issued a

Right-to-Sue Letter to Plaintiff on February 23, 2023.  (*Id.* ¶ 23; *see also generally* Right-to-Sue

Letter (noting that Plaintiff was required to file any lawsuit arising out of the events at issue in

this case within ninety days of her receipt of the Right-to-Sue Letter).)

B.  Procedural History

Plaintiff filed the Complaint initiating this Action on May 22, 2023, which falls within

the ninety-day filing period set forth in the Right-to-Sue Letter.  (*See* Compl.)  On August 14,

2023, Defendants submitted a pre-motion letter, seeking leave to file the instant Motion.  (*See*

Letter from Rebecca M. McCloskey, Esq. to Kristina S. Heuser, Esq. (Aug. 14, 2023) (Dkt.

No. 10).)  Plaintiff responded on August 21, 2023.  (*See* Letter from Kristina S. Heuser, Esq. to

Rebecca M. McCloskey, Esq. (Aug. 21, 2023) (Dkt. No. 12).)  The Court adopted a briefing

schedule for the Motion during a pre-motion conference on September 21, 2023.  (*See* Dkt.

(minute entry for Sept. 21, 2023).)

        Pursuant to that briefing schedule, Defendants filed their Motion on November 15, 2023.

(*See* Not. of Mot.; Mem. of Law in Supp. of Mot. To Dismiss ("Defs' Mem.") (Dkt. No. 16).)

Following a request for an extension to the deadlines for Plaintiff's Opposition and Defendants'

Reply, which the Court granted, (*see* Dkt. Nos. 17–18), Plaintiff filed her Opposition on

December 15, 2023, (*see* Mem. of Law in Opp'n to Mot. To Dismiss ("Pl's Opp'n") (Dkt.

No. 19).).  On January 3, 2024, Defendants filed their Reply.  (*See* Reply Mem. of Law in Supp.

Mot. To Dismiss ("Defs' Reply") (Dkt. No. 20).)

## II.  Discussion

### A.  Standards of Review

        The Supreme Court has held that although a complaint "does not need detailed factual

allegations" to survive a motion to dismiss, "a plaintiff's obligation to provide the grounds of

[its] entitlement to relief requires more than labels and conclusions, and a formulaic recitation of

the elements of a cause of action will not do."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555

(2007) (alteration and quotation marks omitted).  Indeed, Rule 8 of the Federal Rules of Civil

Procedure "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation marks omitted).  "Nor does a complaint

suffice if it tenders naked assertions devoid of further factual enhancement."  *Id.* (alteration and

quotation marks omitted).  Instead, a complaint's "[f]actual allegations must be enough to raise a

right to relief above the speculative level."  *Twombly*, 550 U.S. at 555.

Although "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint," *id.* at 563, and a plaintiff must allege "only enough facts to state a claim to relief that is plausible on its face," *id.* at 570, if a plaintiff has not "nudged [his or her] claims across the line from conceivable to plausible, the[] complaint must be dismissed," *id.*; *see also Iqbal*, 556 U.S. at 679 ("Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.  But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" (citation omitted) (second alteration in original) (quoting Fed. R. Civ. P. 8(a)(2))); *id.* at 678–79 ("Rule 8 marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.").

"[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), and "draw[] all reasonable inferences in favor of the plaintiff," *Daniel v. T & M Prot. Res., Inc.*, 992 F. Supp. 2d 302, 304 n.1 (S.D.N.Y. 2014) (citing *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012)).  Additionally, "[i]n adjudicating a Rule 12(b)(6) motion, a district court must confine its consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken."  *Leonard F. v. Isr. Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999) (citation and quotation marks omitted); *see also Wang v. Palmisano*, 157 F. Supp. 3d 306, 317 (S.D.N.Y. 2016) (same).

B.  Analysis

In the Complaint, Plaintiff asserts four causes of action.  (*See* Compl. ¶¶ 24–35.)  First, Plaintiff claims that VNSW discriminated against her on the basis of her religion in violation of Title VII by failing to provide her with a reasonable accommodation when it denied her request for an exemption from the COVID-19 Vaccine Mandate.  (*Id.* ¶¶ 24–27.)  Second, Plaintiff contends that VNSW subjected her to disparate treatment on the basis of her religion in violation of Title VII by terminating her after she chose not to receive a COVID-19 vaccine.  (*Id.* ¶¶ 28–30.)  Third, Plaintiff alleges that VNSW's actions independently violated the NYSHRL.  (*Id.* ¶¶ 31–32.)  Finally, Plaintiff brings an aiding-and-abetting claim under the NYSHRL against Winchester in connection with Winchester's alleged facilitation of VNSW's religious discrimination against Plaintiff.  (*Id.* ¶¶ 33–35.)

Defendants seek dismissal of each of Plaintiff's claims.  (*See generally* Defs' Mem.) Among other things, VNSW argues that settled caselaw makes clear that it is not liable on Plaintiff's reasonable accommodation claim, because providing Plaintiff a religious *exemption* from the COVID-19 Vaccine Mandate would have been an impermissible undue burden given that offering such an exemption would have violated state law.  (*See id.* at 12–14, 16–20.) VNSW further argues that Plaintiff's disparate treatment claim must fail because she did not meet her burden of pleading facts suggesting an inference of discrimination.  (*See id.* at 21–22.) Lastly, Winchester asserts that Plaintiff failed to adequately plead an NYSHRL aiding-and-abetting claim against her, (*see id.* at 23), and both Defendants contend that—to the extent the Court dismisses Plaintiff's Title VII claims—it should decline to exercise supplemental jurisdiction over her NYSHRL claims, (*see id.* at 23–24).

### 1.  Title VII Claims

#### a.  Failure to Accommodate

The Court turns first to Plaintiff's failure-to-accommodate claim under Title VII.  (*See* Compl. ¶¶ 24–27.)

Title VII prohibits discrimination in employment on the basis of religion and requires employers to reasonably accommodate an employee's religion unless doing so would constitute an undue hardship.  42 U.S.C. § 2000e *et seq.*; *see Trans World Airlines, Inc. v. Hardison*, 432 U.S. 63, 74 (1977) ("The intent and effect of [including religion in Title VII] was to make it an unlawful employment practice under § 703(a)(1) for an employer not to make reasonable accommodations, short of undue hardship, for the religious practices of his employees and prospective employees.").  "To establish a prima facie case of religious discrimination for failure to accommodate, Plaintiff must show that (1) [s]he held a 'bona fide religious belief conflicting with an employment requirement'; (2) [s]he informed [her] employer of this belief; and (3) [s]he was 'disciplined for failure to comply with the conflicting employment requirement.'"  *Algarin*, 678 F. Supp. 3d at 508 (italics omitted) (quoting *Knight v. Conn. Dep't of Pub. Health*, 275 F.3d 156, 167 (2d Cir. 2001)); *accord Pastor v. Mercy Med. Ctr.*, No. 22-CV-7847, 2024 WL 3029118, at *3 (E.D.N.Y. June 17, 2024); *Cagle v. Weill Cornell Med.*, 680 F. Supp. 3d 428, 435 (S.D.N.Y. 2023).[8]  "If the prima facie case is shown, 'the burden then shifts to the employer to show it could not accommodate the employees' religious beliefs without undue hardship.'"  *Algarin*, 678 F. Supp. 3d at 508 (italics omitted) (quoting *Knight*, 275 F.3d at 167); *see also Cagle*, 680 F. Supp. 3d at 435 ("If the employee is able to make out a prima facie case, the burden shifts to the employer to show that it either offered the employee a reasonable

---

[8] "Title VII defines religion to include 'all aspects of religious observance and practice, as well as belief.'"  *Cagle*, 680 F. Supp. 3d at 435 (quoting 42 U.S.C. § 2000e-2(a)(1)).

accommodation or that doing so would cause an undue burden." (italics omitted) (citing *Baker v. Home Depot*, 445 F.3d 541, 546 (2d Cir. 2006))).[9]

Here, drawing all reasonable inferences in her favor, Plaintiff has adequate plead a prima facie case of religious discrimination for failure to accommodate. With respect to the first element of failure-to-accommodate claims—that she "held a bona fide religious belief conflicting with an employment requirement," *Algarin*, 678 F. Supp. 3d at 508 (quotation marks omitted)—she has asserted that she is a Messianic Jew and that, based on her religious convictions, she believes that "[v]accines[, such as COVID-19 vaccines,] contain blood cells and blood components," including "cells derived from chicks cows, pigs[,] and monkeys[,]" as well as "fetal cells from aborted fetuses" and "viruses and bacteria that pollute and poison the bloodstream[,]" (Accommodation Letter 2, 4–5). Plaintiff has further averred that taking any vaccine is "sinful" because doing so demonstrates a lack of trust in God. (*See id.* at 5 ("Taking a vaccine is saying that I trust in man, not in God—this violates my faith and disobeys God's commandments to me.").) And, finally, Plaintiff has claimed, and VNSW does not dispute, that VNSW "implemented a mandatory COVID-19 vaccination policy for its employees" in or around September 2021. (Compl. ¶ 11.) Thus, Plaintiff has satisfied the first element of a failure-to-accommodate claim. *See Algarin*, 678 F. Supp. 3d at 508 (concluding that similar assertions that receiving the COVID-19 vaccine conflicted with the plaintiff's Christian beliefs

---

[9] "Although undue hardship is an affirmative defense, it may be raised on a pre-answer motion to dismiss when the facts establishing it are clear from the face of the complaint." *Dennison v. Bon Secours Charity Health Sys. Med. Grp., P.C.*, No. 22-CV-2929, 2023 WL 3467143, at \*5 (S.D.N.Y. May 15, 2023); *see also Haczynska v. Mount Sinai Health Sys., Inc.*, No. 23-CV-3091, 2024 WL 3178639, at \*12 (E.D.N.Y. June 26, 2024) (same); *Jackson v. N.Y. State Off. of Mental Health - Pilgrim Psychiatric Ctr.*, No. 23-CV-4164, 2024 WL 1908533, at \*6 (E.D.N.Y. May 1, 2024) (same).

supported a prima facie Title VII employment religious discrimination claim); *see also Jackson*, 2024 WL 1908533, at *6 (similar).[10]

In addition, there is no question that Plaintiff "informed" VNSW, through Winchester, "of [her] belief[s]." *Algarin*, 678 F. Supp. 3d at 508 (setting forth the second element of a failure-to-accommodate claim). (*See generally* Accommodation Letter (informing VNSW that getting vaccinated conflicts with Plaintiff's religious views); *see also* Compl. ¶ 12 ("On October 4, 2021, [P]laintiff submitted a request for religious accommodation [in response to VNSW's] mandatory vaccination policy based upon her sincere religious objection to being injected with the vaccine.").) *Jackson*, 2024 WL 1908533, at *6 (concluding that the plaintiff "satisfie[d] the second element" of her prima facie case where she "submitted [her employer's] religious accommodation form with a two-page letter that detailed [her] religious objections to [her employer's] COVID-19 vaccination requirement"). And as to the third element, Plaintiff alleged that VNSW placed her on administrative leave without pay and ultimately terminated her when she did not receive any COVID-19 vaccine. (*See* Compl. ¶¶ 18–19.) Such allegations are "sufficient to plead the final element of the prima facie case of religious discrimination for

---

[10] The Court rejects VNSW's assertion that Plaintiff failed to establish her prima facie case because "her accommodation request was based on false assumptions regarding the [COVID-19] vaccine[s]." (Defs' Mem. 15–16.) This argument ignores the fact that Plaintiff's religious objection to receiving a COVID-19 vaccine is not limited to the contents of those cells; instead, her objection also focused on her belief that taking *any* vaccine is sinful. (*See* Accommodation Letter 5–6.) Moreover, to the extent that Plaintiff was concerned that COVID-19 vaccines contained "fetal cells from aborted fetuses," the Court notes that the Second Circuit has recognized that COVID-19 vaccines were tested or developed using "fetal cells obtained from elective abortions." *We the Patriots I*, 17 F.4th at 276–77 ("As public health authorities have explained, in the 1970s and 1980s, cell lines were derived from fetal cells obtained from elective abortions or miscarriages. These cell lines have since been used in the development of various vaccines. They were used for testing in the research and development phase of the mRNA (Pfizer-BioNTech and Moderna) COVID-19 vaccines and in the production of the Johnson & Johnson COVID-19 vaccine." (footnotes omitted)).

failure to accommodate." *Jackson*, 2024 WL 1908533, at *6 (italics omitted) (quoting *Algarin*, 678 F. Supp. 3d at 509) (collecting cases).

Given that Plaintiff has met her initial pleading burden, "the burden shifts to the employer to show that it either offered the employee a reasonable accommodation or that doing so would cause an undue burden." *Cagle*, 680 F. Supp. 3d at 435. Importantly, the Supreme Court has recently clarified that, in this context, undue burden is "shown when a burden is substantial in the overall context of an employer's business." *Groff v. DeJoy*, 600 U.S. 447, 468 (2023) (rejecting the "more than de minimis" standard that courts had previously derived from *Trans World Airlines, Inc.*, 432 U.S. 63).

Even under that heightened standard for establishing an undue burden, the Court concludes that VNSW has met its burden of showing that, as a matter of law, granting Plaintiff an exemption from the COVID-19 Vaccine Mandate would have imposed such a hardship upon it because it would have been required to violate state law—namely, § 2.61—to do so. That is so because, as noted, VNSW is undisputedly a "covered entity" as alleged; Plaintiff falls under § 2.61's definition of "personnel," given that—at minimum—she provided training to various colleagues, including "field staff," *see We The Patriots I*, 17 F.4th at 297 (defining "personnel" as "all persons employed or affiliated with a covered entity, whether paid or unpaid, including but not limited to employees[] . . . *who engage in activities such that if they were infected with COVID-19, they could potentially expose other covered personnel, patients or residents to the disease*" (emphasis added) (quoting 10 N.Y.C.R.R. § 2.61(a)(2))); (*see also* Accommodation Letter 1); and § 2.61 provided that "covered entities" were to "continuously require personnel to be fully vaccinated against COVID-19," *see* 10 N.Y.C.R.R. § 2.61.

A veritable chorus of federal courts in New York have consistently dismissed similar Title VII claims against healthcare employers that instituted policies consistent with the COVID-19 Vaccine Mandate on the basis that granting employees religious *exemptions* would have created an undue hardship on the employer by forcing them to violate § 2.61. *See, e.g.*, *Haczynska*, 2024 WL 3178639, at *13 (noting that the defendants "would have had to violate state law in order to grant [the p]laintiffs' requested religious exemptions [from the COVID-19 Vaccine Mandate], thereby suffering an undue hardship" and collecting cases (citation omitted)); *Pastor*, 2024 WL 3029118, at *4 ("Plaintiff's requests that [the defendant] allow her to work on site—i.e., her requests to undergo masking, social distancing, and weekly or bi-weekly COVID-19 testing—would have imposed an undue hardship as a matter of law." (citation and quotation marks omitted)); *Addonizio v. Nuvance Health*, No. 23-CV-1582, 2024 WL 2958795, at *7 (S.D.N.Y. June 11, 2024) (stating that "[c]ourts in this Circuit have repeatedly rejected discrimination claims that would require employers to violate [§] 2.61 to accommodate a request for religious exemption or accommodation" and collecting cases); *Kauffman v. N.Y. Presbyterian Hosp.*, No. 23-CV-4964, 2024 WL 2279318, at *6 (S.D.N.Y. May 16, 2024) ("Courts in this Circuit routinely hold that undue hardship exists as a matter of law where an accommodation, including with respect to COVID-19 vaccination, would require the defendant to violate state law, including the [COVID-19 Vaccine] Mandate."), *report and recommendation adopted*, 2024 WL 2944160 (S.D.N.Y. June 10, 2024); *Jackson*, 2024 WL 1908533, at *7 (noting that the defendants had "correctly contend[ed] that [the p]laintiff's requested accommodations that would [have] allow[ed] her to work on site . . .without taking the COVID-19 vaccine would have imposed an undue hardship as a matter of law," because the decision-making defendant "could not have granted th[o]se accommodations without violating [the COVID-19 Vaccine Mandate],

exposing itself to potential penalties, and thereby suffering an undue hardship"); *see also Cagle*, 680 F. Supp. 3d at 436 (likewise collecting "[a] long line of cases in the Southern and Eastern Districts of New York" that "have uniformly rejected claims that an employer is required by Title VII to accommodate a request for a religious exemption from [the COVID-19 Vaccine Mandate] at the cost of violating [§] 2.61 and thus New York law"); *Algarin*, 678 F. Supp. 3d at 509 ("Courts have repeatedly dismissed Title VII claims brought against healthcare employers with a mandatory COVID-19 vaccination requirement because providing the sought religious exemption would create an undue hardship on the employer who would be in violation of the state rule.").  Additionally, a Second Circuit panel recently came to the same conclusion.  *See D'Cunha v. Northwell Health Sys.*, No. 23-476-CV, 2023 WL 7986441, at *2–3 (2d Cir. Nov. 17, 2023) (summary order) (concluding—where the defendant was a "covered entity" and the plaintiff fell under the definition of "personnel" pursuant to the COVID-19 Vaccine Mandate— that the defendant "could not have granted [the plaintiff's] religious-exemption request without violating the [] Mandate, exposing itself to potential penalties, and thereby suffering an undue hardship); *see also id.* at *3 (noting that the panel's "conclusion [was] consistent with the Supreme Court's clarification of the 'undue hardship' standard in *Groff* because the burden placed on an employer from violating a state law, like the [COVID-19 Vaccine] Mandate in this case, is both 'excessive' and 'unjustifiable'" (quoting *Groff*, 600 U.S. at 469)).[11]  Thus, "[l]ike

---

[11] "[C]ourts in the Second Circuit have often noted that unpublished opinions and Summary Orders from the Second Circuit Court of Appeals, while not binding, can be instructive to district courts in resolving particular disputes, and also may be seen as highly persuasive and predictive of how the Second Circuit Court of Appeals would decide an issue in the future." *Flores v. Bergtraum*, No. 20-CV-1240, 2022 WL 125372, at *9 (S.D.N.Y. Jan. 13, 2022) (quoting *Liana Carrier Ltd. v. Pure Biofuels Corp.*, No. 14-CV-3406, 2015 WL 10793422, at *4 (S.D.N.Y. Aug. 14, 2015)); *cf. Brault v. Soc. Sec. Admin., Com'r*, 683 F.3d 443, 450 (2d Cir. 2012) ("We are, of course, permitted to consider summary orders for their persuasive value, and often draw guidance from them in later cases.").

the defendants in these prior cases, [VNSW] would have suffered an 'undue hardship' if forced to grant religious exemptions to Plaintiff[] because [it] would have violated state law." *Haczynska*, 2024 WL 3178639, at *13.[12]

Plaintiff's various arguments attempting to salvage her failure-to-accommodate claim are unavailing. First, Plaintiff argues that she was not "personnel" within the meaning § 2.61 given that she served in an "exclusively administrative function" for VNSW. (Pl's Opp'n 3–5.) To be sure, Plaintiff alleges in the Complaint that her position "consisted entirely of office work" in that she "audited medical charts for state and agency compliance and communicated to staff on charting discrepancies via email and telephone." (Compl. ¶ 9.) Her Accommodation Letter, however, makes clear that she "educat[ed] current and new staff" on various topics; that "[t]he support that [she provided was] not limited to field staff but also extend[ed] to all office staff"; and that she served on "department and agency committees," including as "the scribe" who prepared certain "committee and meeting minutes." (Accommodation Letter 1.) Again, § 2.61 defines "personnel" as "all persons employed or affiliated with a covered entity, whether paid or unpaid, including but not limited to employees[] . . . *who engage in activities such that if they were infected with COVID-19, they could potentially expose other covered personnel, patients or residents to the disease*." *See We The Patriots I*, 17 F.4th at 297 (emphasis added) (quoting 10

_____

*D'Cunha*'s application of the heightened "undue burden" standard set forth in *Groff* in this context—and subsequent district court decisions doing the same, *see, e.g.*, *Haczynska*, 2024 WL 3178639, at *12–13—fatally undermines Plaintiff's contention that older cases coming to the same conclusion that relied on the "more than de minimis cost standard" "are inapposite as they apply an erroneous standard[,]" (*see* Pl's Opp'n 11–12).

[12] Apart from the requirements of § 2.61, the Court does not doubt "there is also the obvious hardship associated with the increased health and safety risk posed to other employees . . . by allowing Plaintiff[] to remain unvaccinated while working at [VNSW's offices], and the risk of civil liability to anyone infected by an unvaccinated employee." *Pastor*, 2024 WL 3029118, at *5 (quoting *Dennison*, 2023 WL 3467143, at *6 n.7) (collecting cases).

N.Y.C.R.R. § 2.61(a)(2)).  Simply put, based on the allegations in the Complaint and the exhibits

attached thereto, there is no question that—if Plaintiff had been "infected with COVID-19"—she

could have "potentially expose[d] other covered personnel," such as the "field staff" she trained,

"to the disease."[13]

    Plaintiff also contends that the many cases holding that plaintiffs' requests for religious

exemptions from the COVID-19 Vaccine Mandate are inapplicable here because those plaintiffs

"were all 'patient-facing' employees or their job duties required them to be on-site and come into

contact with others."  (Pl's Opp'n 5–8.)  But to the extent Plaintiff is again arguing that she did

not fall under the definition of "personnel" under § 2.61, the Court reiterates that, as alleged, she

plainly did fall under that definition because she was not exclusively remote and trained other

VNSW employees, including "field staff."  (*See* Accommodation Letter 1; Compl. ¶ 9–10, 13.)

Moreover, Plaintiff's contention ignores the fact that she was somewhat similarly situated to the

plaintiff in *Algarin*, where the court concluded that granting that plaintiff a religious exemption

from the COVID-19 Vaccine Mandate "would cause [the d]efendant an undue hardship because

it would require Defendant to violate [§ 2.61.]"  678 F. Supp. 3d 509; *see id.* at 502–03 (noting

---

[13] In her Opposition, Plaintiff asserts that she "worked remotely from her home for nearly the duration of the pandemic until her termination[.]"  (Pl's Opp'n 4–5.)  However, the Court will not credit that assertion, because it is inconsistent with the allegations in the Complaint, (*see* Compl. ¶ 10 (alleging that "[a]t *various times during the pandemic*, [P]laintiff's position was exclusively remote" (emphasis added)), and it is well-established that a party cannot amend a pleading via an opposition to a motion to dismiss, *see Cortese v. Skanska Koch, Inc.*, No. 20-CV-1632, 2021 WL 429971, at *18 n.4 (S.D.N.Y. Feb. 8, 2021) ("[The p]laintiffs' argument fails for the simple reason that it was not pleaded and a party cannot amend its complaint through a brief."); *see also Wright v. Ernst & Young LLP*, 152 F.3d 169, 178 (2d Cir. 1998) (finding that a plaintiff may not amend its complaint through its opposition brief); *Schulz v. Medtronic, Inc.*, No. 21-CV-414, 2022 WL 503960, at *2 (D. Conn. Feb. 18, 2022) ("[I]t is axiomatic that [a] [c]omplaint cannot be amended by the briefs in opposition to a motion to dismiss.") (quoting *Weir v. City of New York*, No. 05-CV-9268, 2008 WL 3363129, at *9 (S.D.N.Y. Aug. 11, 2008)); *Red Fort Cap., Inc. v. Guardhouse Prods. LLC*, 397 F. Supp. 3d 456, 476 (S.D.N.Y. 2019) (same).

that the plaintiff was an IT professional and that he "qualified as 'personnel'" for § 2.61 purposes because he "worked on site . . . with co-workers").[14]

At bottom, Plaintiff's arguments in opposition to the instant Motion boil down to the assertion that VNSW should have permitted her to work remotely as an accommodation to her religious objection to the COVID-19 Vaccine Mandate.  (*See* Pl's Opp'n 1, 4–5, 9.)  Of course, employers were permitted to "provid[e] an employee with a reasonable accommodation that remove[d] the individual from the scope of [§ 2.61,]" *We The Patriots I*, 17 F.4th at 292, but courts that have allowed Title VII failure-to-accommodate claims involving remote-work requests to survive motions to dismiss have consistently noted that the plaintiffs had, in fact, *requested* such an accommodation, and they have certainly not determined that baldly asserting

---

[14] Plaintiff also appears to make the meritless argument that Title VII preempts § 2.61 in light of the Supremacy Clause.  (Pl's Opp'n 8–9.)  However, that argument has been roundly rejected by the Second Circuit and the lower courts therein.  *See Bobadilla v. N.Y.C. Health & Hosps. Corp.*, No. 22-CV-10594, 2023 WL 7280478, at *5 (S.D.N.Y. Nov. 3, 2023) ("The Second Circuit . . . has been clear that the mandatory vaccination requirement for employees is not preempted by Title VII and does not violate the Supremacy Clause." (citing *We The Patriots I*, 17 F.4th at 293)); *see also Conde v. Mid Hudson Reg'l Hosp. Med. Ctr.*, No. 22-CV-3085, 2024 WL 168282, at *8 (S.D.N.Y. Jan. 12, 2024) (dismissing a preemption challenge to § 2.61 and noting that "the Second Circuit considered and rejected an argument that [§] 2.61 is preempted by Title VII because [§] 2.61 prevents employers from providing reasonable religious accommodations").

Separately, Plaintiff raises the oft-recycled argument that "on the date of Plaintiff's firing . . . [New York] was enjoined from enforcing [§ 2.61,] which negates [VNSW's] argument that it could not have reasonably accommodated Plaintiff without running afoul of the Rule[.]"  (Pl's Opp'n 3–4 & n.2.)  But that argument has also been routinely—and properly—rejected by other courts.  *See, e.g.*, *Dennison*, 2023 WL 3467143, at *5 n.5 ("That a court had temporarily, and then preliminary enjoined enforcement does not mean employers were free, let alone required, to ignore the State Mandate.  Were the rule otherwise, employers would be required to accurately predict the outcome of litigation in order to avoid liability for discrimination on the one hand, or liability for violating state law on the other." (citation omitted)); *see also D'Cunha*, 2023 WL 7986441, at *3 n.3 ("The Northern District of New York's temporary bar on [] enforcement does not alter our conclusion that undue hardship existed in this case because the [COVID-19 Vaccine] Mandate was still valid law during the injunction period.  Indeed, the bar on [Department of Health] enforcement was promptly vacated by this Court on October 29, 2021." (citations omitted)).

that remote work was a theoretical possibility for the plaintiff was sufficient to survive a motion to dismiss. *See Jackson*, 2024 WL 1908533, at *8 (denying a motion to dismiss where the plaintiff requested "an entirely 'remote' work schedule" and had alleged that "she performed 'administrative work' that was entirely 'computer based' and that [the defendant] allowed her to do that work remotely for over one year before it required [her] to return to in-person work" (citation omitted)); *Grimes v. N.Y. & Presbyterian Hosp.*, No. 23-CV-652, 2024 WL 816208, at *6 (S.D.N.Y. Feb. 26, 2024) (permitting a Title VII religious discrimination claim to proceed in the vaccination mandate context where the plaintiff had requested, and was denied, a telework accommodation when the plaintiff was already a remote employee); *cf. Dennison*, 2023 WL 3467143, at *6 (dismissing Title VII claim on undue hardship grounds where the plaintiffs "did not request remote work or some other arrangement that would have removed them from [§ 2.61's] definition of 'personnel'"). Here, even accepting all of her allegations as true, Plaintiff *never requested* that VNSW permit her to transition to an entirely remote schedule. (*See generally* Compl.; Accommodation Letter.) And although Plaintiff argues that VNSW was required to prove that "every conceivable accommodation would cause it to suffer an undue burden," she offers no authority supporting that remarkably high (not to mention self-serving) standard. (Pl's Opp'n 13.)

Accordingly, the Motion is granted as against Plaintiff's Title VII failure-to-accommodate claim against VNSW.

### b. Disparate Treatment

Next, the Court addresses Plaintiff's disparate-treatment claim under Title VII against VNSW. (*See* Compl. ¶¶ 28–30.)

Claims of discrimination under Title VII are analyzed under the well-known, three-part framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See, e.g.*,

*Littlejohn v. City of New York*, 795 F.3d 297, 312 (2d Cir. 2015) ("[Plaintiff's] disparate treatment claim under Title VII[] . . . is subject to the burden shifting evidentiary framework set forth in *McDonnell Douglas*." (citing *Ruiz v. County of Rockland*, 609 F.3d 486, 491 (2d Cir. 2010))).  "To state a claim under [a] disparate treatment theory, [a plaintiff] must allege that: '(1) she is a member of a protected class; (2) she is qualified for her position; (3) she suffered an adverse employment action; and (4) the circumstances give rise to an inference of discrimination.'"  *Moore v. Montefiore Med. Ctr.*, No. 22-CV-10242, 2023 WL 7280476, at *4 (S.D.N.Y. Nov. 3, 2023) (quoting *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 83 (2d Cir. 2015)); *accord French v. Albany Med. Ctr.*, No. 22-CV-252, 2024 WL 2958461, at *14 (N.D.N.Y. June 12, 2024).  "The burden to establish such a prima facie case is fairly 'minimal.'"  *Moore*, 2023 WL 7280476, at *4 (quoting *Walsh v. N.Y.C. Hous. Auth.*, 828 F.3d 70, 75 (2d Cir. 2016)).  If a plaintiff successfully makes out her prima facie case, the burden then shifts to the employer to demonstrate a legitimate, non-discriminatory purpose for the adverse employment action.  *See McDonnell Douglas*, 411 U.S. at 802.  Finally, if an employer satisfies this requirement, the burden shifts back to the employee to demonstrate, by a preponderance of the evidence, that the non-discriminatory reason was actually a pretext for discrimination.  *See id.* at 804–05; *see also Kovaco v. Rockbestos-Surprenant Cable Corp.*, 834 F.3d 128, 136 (2d Cir. 2016) (articulating the three step *McDonnell Douglas* framework).

The Court recognizes that, at the motion to dismiss stage a plaintiff "is not required to plead a prima facie case under *McDonnell Douglas*[.]"  *Vega*, 801 F.3d at 84 (italics omitted). For employment discrimination claims under Title VII, "a plaintiff must plausibly allege that [i] the employer took adverse action against [her] and [ii] [her] race, color, religion, sex, or national origin was a motivating factor in the employment decision."  *Vega*, 801 F.3d at 86;

21

*accord Makhsudova v. City of New York*, No. 20-CV-10728, 2022 WL 1571152, at *6 (S.D.N.Y.

May 18, 2022).  Thus, "the Court need only concern itself with the first phase of the *McDonnell*

*Douglas* framework[.]"  *Kirkland-Hudson v. Mount Vernon City Sch. Dist.*, 665 F. Supp. 3d 412,

449 (S.D.N.Y. 2023); *see also Munoz-Nagel v. Guess, Inc.*, No. 12-CV-1312, 2013 WL

6068597, at *1 (S.D.N.Y. Nov. 15, 2013) ("[A] [p]laintiff need not make out a prima facie case

at the pleading stage, and may withstand a motion to dismiss by providing a short and plain

statement of the claim that shows that she is entitled to relief that gives [the defendant] fair

notice of the . . . discrimination claim and the grounds upon which it rests." (italics and citation

omitted)).  "Although [the] [p]laintiff need not allege facts sufficient to make out a prima facie

case for any of her discrimination claims in her [c]omplaint, the elements thereof provide an

outline of what is necessary to render her claims for relief plausible."  *Sommersett v. City of New*

*York*, No. 09-CV-5916, 2011 WL 2565301, at *5 (S.D.N.Y. June 28, 2011) (italics omitted); *see*

*also Littlejohn*, 795 F.3d at 311 & n.9 (noting that, although a plaintiff need not plead a prima

facie case of discrimination, "the elements of a prima facie case may be used as a prism to shed

light upon the plausibility of the claim" (quotation marks and citation omitted)); *Ndremizara v.*

*Swiss Re Am. Holding Corp.*, 93 F. Supp. 3d. 301, 312 (S.D.N.Y. 2015) (collecting cases);

*Barker v. UBS AG*, No. 09-CV-2084, 2011 WL 283993, at *5 (D. Conn. Jan. 26, 2011) ("[E]ven

though establishing a prima facie case of . . . discrimination is not necessary to survive a motion

to dismiss, courts do use the standard as a guidepost when determining whether the plaintiff has

provided the defendant with fair notice of her claim, as required by the Federal Rules of Civil

Procedure.").

    Although VNSW does not—and could not—dispute that Plaintiff has adequately alleged

that she is a member of a protected class and that she suffered an adverse employment action, *see*

*Moore*, 2023 WL 7280476, at *4 (determining that the plaintiff's allegations as to her religious affiliation placed her within a protected class and that the termination of her employment constituted an adverse employment action), Plaintiff's disparate-treatment-based claim, as alleged, falls short because she has failed to sufficiently plead "circumstances [that] give rise to an inference of discrimination[,]" *id.* (citation omitted).

> In connection with her disparate treatment claim, Plaintiff avers that:
>
> [VNSW] treated persons requesting medical exemptions from its COVID-19 vaccine mandate differently (i.e., preferentially) to persons requesting exemption from the policy on the basis of sincerely held religious beliefs. Plaintiff is aware of three other employees of [VNSW] that were terminated after seeking and being denied religious accommodation from [VNSW's] vaccine mandate. On the other hand, [P]laintiff is aware of several medical exemptions/accommodations that were granted by [VNSW] to its employees.

(Compl. ¶ 29.) In raising these allegations, Plaintiff attempts to raise the inference that she was discriminated against given that (1) certain unidentified VNSW employees were granted "medical exemptions/accommodations" and (2) three other VNSW employees requested "religious accommodations" from the COVID-19 Vaccine Mandate, were denied those accommodations, and were ultimately terminated.

To be sure, "a plaintiff can raise an inference of discrimination by demonstrating the disparate treatment of at least one similarly situated employee outside [her] protected group and sufficient facts from which it may reasonably be inferred that 'the plaintiff's and comparator's circumstances . . . bear a reasonably close resemblance.'" *Sutter v. Dibello*, No. 18-CV-817, 2021 WL 930459, at *21 (E.D.N.Y. Mar. 10, 2021) (quoting *Hu v. City of New York*, 927 F.3d 81, 96–97 (2d Cir. 2019)). The alleged comparator must be similar enough "to support at least a minimal inference that the difference of treatment may be attributable to discrimination." *McGuinness v. Lincoln Hall*, 263 F.3d 49, 54 (2d Cir. 2001); *accord Kirkland-Hudson,* 665

F. Supp. 3d at 454; *Cardwell v. Davis Polk & Wardwell LLP*, No. 19-CV-10256, 2020 WL 6274826, at *22 (S.D.N.Y. Oct. 24, 2020).

As an initial matter, the fact that certain VNSW employees were granted *medical* "exemptions/accommodations," (*see* Compl. ¶ 29), does nothing to raise the inference that Plaintiff was discriminated against on the basis of her religion.  Simply put, these comparators, such as they are, are plainly not sufficiently similar to Plaintiff—who requested a *religious* exemption—to support even a "minimal inference that the difference of treatment may be attributable to discrimination."  *McGuinness*, 263 F.3d at 54.  Indeed, it should come as no surprise that VNSW granted medical accommodations to its employees, as § 2.61 expressly permitted medical exemptions for "personnel' for whom 'immunization with COVID-19 vaccine is detrimental to [their] health . . . , based upon a pre-existing health condition.'"  *We The Patriots I*, 17 F.4th at 274–75 (quoting 10 N.Y.C.R.R. § 2.61(d)(1)); *see also Algarin*, 678 F. Supp. 3d at 517 ("[A]pplying the vaccination requirement to those with medical contraindications would not advance the governmental interest in protecting the health of the workforce and allow them to continue working.").

As to the three other VNSW employees who were allegedly "terminated after seeking and being denied religious accommodation" in connection with the COVID-19 Vaccine Mandate, (*see* Compl. ¶ 29), the Court concludes that, as alleged, these comparators do not raise the inference that Plaintiff's religion was "a motivating factor in the employment decision," *Vega*, 801 F.3d at 86.  Beyond alleging that these individuals sought an unspecified religious accommodation, that such an accommodation was denied, and that they were ultimately terminated, Plaintiff provides no specific information suggesting that they were in any way similarly situated as compared to Plaintiff, such as their job title, the type of accommodation (or

24

exemption) they sought, the basis for their requested accommodation, or even their religious affiliation.  (*See generally* Compl.)  On this record, Plaintiff simply has not "nudged [her] claim[] across the line from conceivable to plausible."  *Twombly*, 550 U.S. at 570; *see Moore*, 2023 WL 7280476, at *5 (concluding that an asserted comparator did not raise an inference of discrimination where the plaintiff had not "identif[ied] what his religious denomination was, how his treatment compared to her own, or any details regarding whether he was otherwise 'similarly situated' to her"); *see also Blige v. City Univ. of N.Y.*, No. 15-CV-8873, 2017 WL 498580, at *9 (S.D.N.Y. Jan. 19, 2017) ("Numerous courts within the Second Circuit have granted motions to dismiss disparate treatment claims where the complaint was entirely devoid of any details regarding the purported comparators, e.g., who they are, what their positions or responsibilities were at the company, how their conduct compared to [the] plaintiffs'[,] or how they were treated differently by [the] defendants." (alteration adopted) (italics, quotation marks, and citation omitted)), *report and recommendation adopted*, 2017 WL 1064716 (S.D.N.Y. Mar. 21, 2017); *Mesias v. Cravath, Swaine & Moore LLP*, 106 F. Supp. 3d 431, 437 (S.D.N.Y. 2015) (dismissing a plaintiff's claim for failing to plausibly allege an inference of discrimination when she provided no facts supporting an indication that she was "similarly situated" to those to whom she compared herself).[15]

---

[15] Plaintiff does assert that VNSW failed to "engage in the mandatory interactive process" with her.  (Pl's Opp'n 12–13.)  In making this argument, however, Plaintiff relies on inapposite caselaw discussing claims under the Americans with Disabilities Act.  (*See id.* at 12 (citing *Malzberg v. N.Y. Univ.*, No. 19-CV-10048, 2022 WL 889240, at *14 (S.D.N.Y. Mar. 25, 2022)).)  In any event, the allegations in the Complaint and its attached exhibits make clear that VNSW did engage in a meaningful interactive process with her in connection with her request for a religious exemption from the COVID-19 Vaccine Mandate.  (*See* Compl. ¶¶ 12–14, 16, 18; *see also* VNSW Denial Letter.)

In sum, the Court grants the instant Motion to the extent it seeks dismissal of Plaintiff's Title VII disparate-treatment claim.[16]

### 2. NYSHRL Claims

The Court now turns to Plaintiff's NYSHRL claims. (*See* Compl ¶¶ 31–35.) In light of the Court's dismissal of Plaintiff's federal claims under Title VII, the Court declines to exercise supplemental jurisdiction over her state-law NYSHRL claims. *See* 28 U.S.C. § 1367(c)(3) ("[D]istrict courts may decline to exercise supplemental jurisdiction over a claim . . . [if] the district court has dismissed all claims over which it has original jurisdiction . . . .").

"Once a district court's discretion is triggered under § 1367(c)(3), it balances the traditional values of judicial economy, convenience, fairness, and comity, in deciding whether to

---

[16] The Court notes that Plaintiff did not bother responding to VNSW's argument that she failed to allege that she was qualified for her position. (*See* Def's Mem. 20–21; *see also generally* Pl's Opp'n.) The law is clear that "employers have broad discretion to determine [] necessary job qualifications." *Sulehria v. City of New York*, 670 F. Supp. 2d 288, 309 (S.D.N.Y. 2009) (collecting cases); *accord D'Cunha v. Northwell Health Sys.*, No. 22-CV-988, 2023 WL 2266520, at *3 (S.D.N.Y. Feb. 28, 2023) (noting that "courts look to the criteria the *employer* has specified for the position" (emphasis in original) (citation omitted)). And in cases involving the COVID-19 Vaccine Mandate, courts regularly conclude that vaccination is a proper "condition of employment in the healthcare field." *We The Patriots I*, 17 F.4th at 294; *see Kane v. de Blasio*, 623 F. Supp. 3d 339, 363 (S.D.N.Y. 2022) (collecting cases); *see also D'Cunha*, 2023 WL 2266520, at *3 (noting that courts had consistently come to the same conclusion). Here, the Complaint makes clear that (1) VNSW "implemented a mandatory COVID-19 vaccination policy for its employees" and, thereafter, (2) Plaintiff chose not to receive any COVID-19 vaccine and did not otherwise receive an exemption. (Compl. ¶¶ 11–12, 18–19.) Thus, Plaintiff has not alleged that she was qualified for her position. *See Haczynska*, 2024 WL 3178639, at *11 n.15 (determining that the plaintiffs—who had sought an exemption from a COVID-19 vaccine requirement—failed to allege that they were qualified for their positions for Title VII purposes "because even as described in the [operative c]omplaint, receipt of the COVID-19 vaccine was a requirement for their positions while [§] 2.61 was in effect"); *D'Cunha*, 2023 WL 2266520, at *3 ("The [c]omplaint alleges that [the defendant] implemented [] a [COVID-19 vaccine] mandate—employees were required to receive a COVID-19 vaccine or receive a religious or medical exemption by September 27, 2021. . . . [The plaintiff] had not received a vaccine or an exemption. Accordingly, the [c]omplaint fails to allege she was qualified for her position." (quotation marks and citations omitted)).

exercise jurisdiction." *Kolari v. N.Y.-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006) (citation and quotation marks omitted); *accord Gibson v. Mount Vernon Montefiore Hosp. Exec. Dir.*, No. 22-CV-4213, 2024 WL 1217528, at *13 (S.D.N.Y. Mar. 19, 2024). "[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered . . . will point toward declining to exercise jurisdiction over the remaining state-law claims." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988); *see also Marcus v. AT&T Corp.*, 138 F.3d 46, 57 (2d Cir. 1998) ("In general, where the federal claims are dismissed before trial, the state claims should be dismissed as well."); *Pitchell v. Callan*, 13 F.3d 545, 547 (2d Cir. 1994) ("It is axiomatic that when all federal claims are eliminated prior to trial, a court should decline to exercise jurisdiction over any remaining pendent state claims." (quotation marks omitted)); *Gibson*, 2024 WL 1217528, at *13 (same).

The Court concludes that there is nothing that distinguishes this Action from "the usual case." *See Cohill*, 484 U.S. at 350 n.7. Plaintiff's federal claims have all been dismissed, *see Dellutri v. Village of Elmsford*, 895 F. Supp. 2d 555, 575 (S.D.N.Y. 2012) (declining to exercise supplemental jurisdiction where "th[e] case remains in its initial stages, and the [p]arties have not yet proceeded to discovery"); *Middleton v. United States*, No. 10-CV-6057, 2012 WL 394559, at *1 (E.D.N.Y. Feb. 7, 2012) (declining to exercise supplemental jurisdiction because no federal claims survived a motion to dismiss), and none of the factors that the Supreme Court enunciated in *Cohill*—"judicial economy, convenience, fairness, [or] comity"—counsels against such dismissal, 484 U.S. at 350 n.7. Thus, Plaintiff's NYSHRL claims against VNSW and Winchester are dismissed.

## III.  Conclusion

For the foregoing reasons, the Court grants Defendants' Motion. Because this is the first adjudication of Plaintiff's claims on the merits, the dismissal of those claims is without

prejudice.  If Plaintiff has a good faith basis to file an amended complaint alleging additional

facts and otherwise addressing the myriad deficiencies identified above, Plaintiff must do so

within thirty days of the date of this Opinion & Order.  There will be no extensions.  Plaintiff is

further advised that any amended complaint will completely replace, not supplement, the now-

dismissed Complaint.  Any amended complaint must therefore contain *all* of the claims,

defendants, and factual allegations that Plaintiff wishes the Court to consider.  If Plaintiff fails to

timely file an amended complaint, the dismissed claims will be dismissed with prejudice.

 The Clerk of Court is respectfully directed to terminate the pending Motion.  (*See* Dkt.

No. 15.)

SO ORDERED.

Dated: September 19, 2024
   White Plains, New York

               KENNETH M. KARAS
              United States District Judge