UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

KIMBERLY GREENBERG,

                                        Plaintiff,

        v.                                                          No. 23-CV-4252 (KMK)

VISITING NURSE SERVICES IN                           OPINION & ORDER
WESTCHESTER, INC. *and* ANDREA
WINCHESTER,

                                        Defendants.

Appearances:

Kristina S. Heuser, Esq.
Kristina S. Heuser, P.C.
Locust Valley, NY
*Counsel for Plaintiff*

Rebecca M. McCloskey, Esq.
Jill Chow, Esq.
Jackson Lewis P.C.
White Plains, NY
*Counsel for Defendants*

KENNETH M. KARAS, United States District Judge:

        Plaintiff Kimberly Greenberg ("Plaintiff") brings this Action against Visiting Nurse

Services in Westchester, Inc. ("VNSW") and Andrea Winchester ("Winchester," and together

with VNSW, "Defendants"), alleging that VNSW violated Title VII of the Civil Rights Act of

1964, 42 U.S.C. § 2000e ("Title VII"), as well as the New York State Human Rights Law

("NYSHRL"), when it denied her a religious exemption or accommodation to a mandatory

COVID-19 vaccination policy.  (*See generally* Am. Compl. (Dkt. No. 22).)[1]  Plaintiff also brings

an NYSHRL aiding-and-abetting claim against Winchester.  (*Id.* ¶¶ 36–38.)  Before the Court is

Defendants' Motion to Dismiss the Amended Complaint pursuant to Federal Rule of Civil

Procedure 12(b)(6) (the "Motion").  (*See* Not. of Mot. (Dkt. No. 32).)  For the following reasons,

the Court grants Defendants' Motion.

## I.  Background

The Court assumes the Parties' familiarity with the factual background and procedural

history of this case as described in its prior Opinion & Order, (*see* Op. & Order ("September

2024 Op.") 2–8 (Dkt. No. 21)),[2] and will therefore recount them only insofar as relevant to the

instant Motion.

### A.  Factual Background

The following facts are drawn from the Amended Complaint, as well as the exhibits

attached and referenced there.  (*See generally* Am. Compl.; Am. Compl. Ex. A

("Accommodation Letter") (Dkt. No. 22-1); Am. Compl. Ex. B ("VNSW Denial Letter") (Dkt.

No. 22-2); Am. Compl. Ex. C ("Appeal Letter") (Dkt. No. 22-3); Am. Compl. Ex. D ("Response

to Appeal") (Dkt. No. 22-4); Am. Compl. Ex. E ("Right-to-Sue Letter") (Dkt. No. 22-5).)[3]  The

facts alleged are assumed true for the purpose of resolving the instant Motion.  *See Div. 1181*

---

[1] Unless otherwise noted, the Court cites to the ECF-stamped page number in the upper-right corner of each page.

[2] This Opinion is published at *Greenberg v. Visiting Nurse Servs. in Westchester, Inc.*, No. 23-CV-4252, 2024 WL 4252550 (S.D.N.Y. Sept. 19, 2024).

[3] To be clear, "[i]n deciding a Rule 12(b)(6) motion" the Court may properly consider, inter alia, "the facts alleged in the pleadings, [as well as] documents attached as exhibits or incorporated by reference in the pleadings[.]"  *Hu v. City of New York*, 927 F.3d 81, 88 (2d Cir. 2019) (citation and internal quotation marks omitted); *accord Bellin v. Zucker*, 6 F.4th 463, 473 (2d Cir. 2021).

*Amalgamated Transit Union-N.Y. Emps. Pension Fund v. N.Y.C. Dep't of Educ.*, 9 F.4th 91, 94 (2d Cir. 2021) (per curiam).

### 1. The Parties

VNSW operates as a "provider of home health care services."  (Am. Compl. ¶ 5.) Plaintiff was a VNSW employee for eight years.  (*See id.* ¶ 7.)  As of October 2021, Plaintiff held the full-time position of "Nurse Auditor."  (*Id.* ¶ 8.)  As alleged, Plaintiff's role consisted "entirely of office work[,]" as she "audited medical charts for state and agency compliance and communicated to staff on charting discrepancies via email and telephone."  (*Id.* ¶ 9.)  She avers that during "the pandemic, Plaintiff and her counterparts at VNSW worked remotely."  (*Id.* ¶ 10.) While "Plaintiff does not recall the precise dates[,]" she worked remotely for "approximately three months in Spring 2020 after the onset of the pandemic."  (*Id.* ¶ 10 n.5.)  And after returning "to the office, there was a rotating schedule that had Ms. Greenberg coming into the office half the week and working remotely the other half.  Th[at] lasted well into 2021."  (*Id.*)

In addition, Plaintiff was "involved in Education" at VNSW, as she "educat[ed] current and new staff in OASIS, documentation compliance, and [] learning [VNSW's] new EMR HomeCare HomeBase (HCHB)[,] as well as in Forcura and Sophos."  (Accommodation Letter 1 (noting that "[t]he support that [Plaintiff gave was] not limited to field staff but also extend[ed] to all office staff").)  Further, Plaintiff served on "department and agency committees," including as "the scribe" who prepared certain "committee and meeting minutes."  (*Id.*)  She allegedly "performed th[ese] task[s] on a voluntary and temporary basis."  (Am. Compl. ¶ 9 n.4.)

When the events at issue in this case took place, Winchester was VNSW's Director of Human Resources.  (VNSW Denial Letter 1.)

2.  The COVID-19 Vaccine Mandate

In August 2021, in response to the COVID-19 pandemic, "New York's Department of Health adopted an emergency rule directing hospitals, nursing homes, hospices, adult care facilities, and other identified healthcare entities to 'continuously require' certain of their employees to be fully vaccinated against COVID-19." *We the Patriots USA, Inc. v. Hochul* ("*We the Patriots I*"), 17 F.4th 266, 274 (2d Cir.) (per curiam) (citing 10 N.Y.C.R.R. § 2.61), *clarified*, 17 F.4th 368 (2d Cir. 2021).[4]  That rule ("the COVID-19 Vaccine Mandate" or "§ 2.61") applied to "those employees, staff members, and volunteers 'who engage in activities such that if they were infected with COVID-19, they could potentially expose other covered personnel, patients[,] or residents to the disease.'"  *Id.* (quoting 10 N.Y.C.R.R. § 2.61(a)(2)).  It took effect on October 7, 2021 for "covered entities."[5]  *Id.*  The COVID-19 Vaccine Mandate lacked a religious exemption but "d[id] not prohibit employers from providing religious objectors with accommodations."  *Id.* at 275; *see Kane v. De Blasio*, 19 F.4th 152, 160 n.5 (2d Cir. 2021) (explaining that exemptions differ from accommodations because the former allows people to be entirely "not subject to" a given rule)  Put another way, "[§] 2.61, on its face, does not bar an employer from providing an employee with a reasonable accommodation *that removes the individual from the scope of the Rule*[;] [i]n other words, it may be *possible* under [§ 2.61] for an

---

[4] "[T]he Court may take judicial notice of facts regarding COVID-19[,]" including related rules and regulations.  *Does 1–2 v. Hochul*, 632 F. Supp. 3d 120, 127 n.1 (E.D.N.Y. 2022), *aff'd in part and vacated in part*, No. 22-2858 (2d Cir. Dec. 20, 2024) (summary order); *see also Algarin v. N.Y.C. Health & Hosps. Corp.*, 678 F. Supp. 3d 497, 502 n.4 (S.D.N.Y. 2023) (discussing how the court may take judicial notice of facts about COVID-19), *aff'd*, No. 23-1063, 2024 WL 1107481 (2d Cir. Mar. 14, 2024).

[5] The Parties appear to agree that VNSW was a "covered entity" for purposes of the COVID-19 Vaccine Mandate.  *See We the Patriots I*, 17 F.4th at 296–97 (listing "certified home health agencies, . . . licensed home care service agencies, and limited licensed home care service agencies" as examples of covered entities (quoting 10 N.Y.C.R.R. § 2.61(a)(1)(ii))).  (*See also* Am. Compl. ¶ 5 (alleging that VNSW is a "provider of home health care services").)

employer to *accommodate*—not *exempt*—employees with religious objections, by employing

them in a manner that removes them from the Rule's definition of 'personnel.'"  *We the Patriots*

*USA, Inc. v. Hochul* ("*We the Patriots II*"), 17 F.4th 368, 370 (2d Cir. 2021) (per curiam)

(emphases in original) (quotation marks and citations omitted).

### 3.  Plaintiff's Request for a Religious Exemption or Accommodation

Pursuant to the COVID-19 Vaccine Mandate, VNSW required its employees to receive

their first dose of a COVID-19 vaccine by no later than October 7, 2021.  (*See* Am. Compl.

¶ 11.)  However, in light of her religious objection to receiving any vaccination, Plaintiff

submitted a written request to VNSW—through Winchester—for a "religious accommodation"

or "exemption" from the COVID-19 Vaccine Mandate on October 4, 2021.  (*See id.* ¶ 12;

Accommodation Letter 1.)

In her Accommodation Letter, Plaintiff specifically requested a "religious exemption"

based on her religious beliefs as a Messianic Jew.  (Accommodation Letter 1–2.)[6]  Plaintiff

explained her conviction that "all vaccination is disobedient to God and contradictory to faith in

God."  (*Id.* at 2.)  Additionally, Plaintiff stated that "[v]accines contain blood cells and blood

components," including "cells derived from chicks cows, pigs[,] and monkeys[,]" as well as

"fetal cells from aborted fetuses" and "viruses and bacteria that pollute and poison the

bloodstream."  (*Id.* at 2–4 ("These [items] are all sinful to take into the body in any way.").)

Plaintiff further explained that, pursuant to her religious convictions, abortion is murder and that

getting a vaccination containing—or that otherwise "depended on"—fetal cells is a sin.  (*Id.* at

4–5.)  Moreover, Plaintiff noted that "[i]t is unholy, sinful, unclean, and disobedient to intake

another's blood/blood components into oneself," regardless of whether the source was "animal

---

[6] In her Accommodation letter, Plaintiff explains that Messianic Jews are also known as Jewish Christians.  (Accommodation Letter 2.)

or human." (*Id.* at 5 ("The genetic and chemical make-up of the blood is not something that should be altered or manipulated . . . . My blood is divine and holds divine life. My blood is healthy because I am made in the image of God and because he gives me divine immunity.").) Cutting to the heart of her religious objection to the COVID-19 Vaccine Mandate, Plaintiff explained that "[t]aking a vaccine is saying that I trust in man, not in God—this violates my faith and disobeys God's commandments to me." (*Id.*; *see also id.* at 6 ("I will have to appear before the judgment seat of God and answer for what was done to my body and what I have allowed or not allowed into my body. I cannot take vaccines—it is a betrayal of my faith; it is disobedient and sinful to my God.").)

Notably, the only accommodation requested in Plaintiff's Accommodation Letter was a complete exemption from receiving the COVID-19 vaccine. (*See generally id.*)

### 4. VNSW's Response and Plaintiff's Termination

After Plaintiff's Accommodation Letter, Defendant, through Winchester, directed Plaintiff to work remotely for the week of October 8, 2021. (*See* Am. Compl. ¶ 13.)[7] Winchester further "directed [P]laintiff to provide [VNSW] with a letter from a religious leader and documentation supporting her contention that the COVID-19 vaccine contains aborted fetal cells[.]" (*Id.* ¶ 15.)

Ultimately, on October 13, 2021, Winchester called Plaintiff and informed her that her request for a religious accommodation was denied and that she was to be placed on administrative leave without pay effective October 14, 2021. (*See id.* ¶ 19.) Winchester also sent Plaintiff a letter on VNSW's behalf, explaining that "VNSW has not made any determinations regarding whether [Plaintiff's] belief [was] one that [was] sincerely held under

---

[7] In the Amended Complaint, Plaintiff generally refers to Winchester as VNSW's "agent." (*See, e.g.*, Am. Compl. ¶¶ 6, 13.)

any applicable laws," but that Plaintiff had "failed to substantiate [her] request with verifiable

evidence that support[ed] [her] position."  (VNSW Denial Letter 1.)  The letter concluded by

indicating that Plaintiff would receive a "five day[] unpaid leave of absence . . . to reconsider

receiving the vaccination."  (*Id.* ("If we do not receive proof of vaccination by [the end of

Plaintiff's leave], your employment will be terminated for failure to adhere to the vaccine

mandate.").)[8]

Plaintiff did not get the COVID-19 vaccine because, she claims, doing so would have

caused her to violate her sincerely held religious beliefs.  (Am. Compl. ¶ 23.)  As a result,

VNSW terminated her employment on or around October 18, 2021.  (*Id.* ¶ 24.)

On May 2, 2022, Plaintiff formally filed a Charge of Discrimination against VNSW with

the Equal Employment Opportunity Commission ("EEOC").  (*Id.* ¶ 25.)  The EEOC issued a

Right-to-Sue Letter to Plaintiff on February 23, 2023.  (*Id.*; *see also generally* Right-to-Sue

Letter (noting that Plaintiff was required to file any lawsuit arising out of the events at issue in

this case within ninety days of her receipt of the Right-to-Sue Letter).)

B.  Procedural History

On September 19, 2024, the Court issued an Opinion & Order granting Defendants'

Motion to Dismiss.  (*See generally* September 2024 Op.)  In that Opinion, the Court granted

Plaintiff leave to file an amended complaint.  (*Id.* at 28.)  Plaintiff filed her Amended Complaint

on October 8, 2024.  (*See generally* Am. Compl.)  Defendants filed their Motion on January 9,

2025.  (*See* Not. of Mot.; Mem. of Law in Supp. of Mot. to Dismiss ("Defs' Mem.") (Dkt. No.

31).)  Following a request for an extension to the deadlines for Plaintiff's Opposition and

---

[8] On October 14, 2021, Plaintiff submitted an "appeal letter" in response to the denial letter.  (*Id.* ¶ 21.)  Defendant responded the following day reiterating its prior position.  (*Id.* ¶ 22; Response to Appeal.)

Defendants' Reply, which the Court granted, (*see* Dkt. Nos. 33–34), Plaintiff filed her

Opposition on February 14, 2025, (*see* Mem. of Law in Opp'n to Mot. to Dismiss ("Pl's Opp'n")

(Dkt. No. 35)).  On March 6, 2025, Defendants filed their Reply.  (*See* Reply Mem. of Law in

Supp. Mot. to Dismiss ("Defs' Reply") (Dkt. No. 36).)

## II.  Discussion

### A.  Standard of Review

The Supreme Court has held that although a complaint "does not need detailed factual

allegations" to survive a motion to dismiss, "a plaintiff's obligation to provide the grounds of

[its] entitlement to relief requires more than labels and conclusions, and a formulaic recitation of

the elements of a cause of action will not do."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555

(2007) (alteration and quotation marks omitted).  Indeed, Rule 8 of the Federal Rules of Civil

Procedure "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation marks omitted).  "Nor does a complaint

suffice if it tenders naked assertions devoid of further factual enhancement."  *Id*. (alteration and

quotation marks omitted).  Instead, a complaint's "[f]actual allegations must be enough to raise a

right to relief above the speculative level."  *Twombly*, 550 U.S. at 555.

Although "once a claim has been stated adequately, it may be supported by showing any

set of facts consistent with the allegations in the complaint," *id.* at 563, and a plaintiff must

allege "only enough facts to state a claim to relief that is plausible on its face," *id.* at 570, if a

plaintiff has not "nudged [his or her] claims across the line from conceivable to plausible, the[]

complaint must be dismissed," *id*.; *see also Iqbal*, 556 U.S. at 679 ("Determining whether a

complaint states a plausible claim for relief will . . . be a context-specific task that requires the

reviewing court to draw on its judicial experience and common sense.  But where the well-

pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the

complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" (citation

omitted) (second alteration in original) (quoting Fed. R. Civ. P. 8(a)(2))); *id*. at 678–79 ("Rule 8

marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior

era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than

conclusions.").

     "[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the

factual allegations contained in the complaint," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), and

"draw[] all reasonable inferences in favor of the plaintiff," *Daniel v. T & M Prot. Res., Inc.*, 992

F. Supp. 2d 302, 304 n.1 (S.D.N.Y. 2014) (citing *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145

(2d Cir. 2012)).  Additionally, "[i]n adjudicating a Rule 12(b)(6) motion, a district court must

confine its consideration to facts stated on the face of the complaint, in documents appended to

the complaint or incorporated in the complaint by reference, and to matters of which judicial

notice may be taken." *Leonard F. v. Isr. Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999)

(citation and quotation marks omitted); *see also Wang v. Palmisano*, 157 F. Supp. 3d 306, 317

(S.D.N.Y. 2016) (same).

     B.  Analysis

     In the Amended Complaint, Plaintiff asserts three causes of action.  (*See* Am. Compl.

¶¶ 26–38.)  First, Plaintiff claims that VNSW discriminated against her on the basis of her

religion in violation of Title VII by failing to provide her with a reasonable accommodation

when it denied her request for an exemption from the COVID-19 Vaccine Mandate.  (*Id.*

¶¶ 26–33.)  Second, Plaintiff alleges that VNSW's actions independently violated the NYSHRL.

(*Id.* ¶¶ 34–35.)  Third, Plaintiff brings an aiding-and-abetting claim under the NYSHRL against

Winchester in connection with Winchester's alleged facilitation of VNSW's religious

discrimination against Plaintiff.  (*Id.* ¶¶ 36–38.)

Defendants seek dismissal of each of Plaintiff's claims.  (*See generally* Defs' Mem.)
Among other things, VNSW argues that settled caselaw makes clear that it is not liable on
Plaintiff's reasonable accommodation claim because providing Plaintiff a religious exemption
from the COVID-19 Vaccine Mandate would have been an impermissible undue burden given
that offering such an exemption would have violated state law, and Plaintiff did not request a
religious accommodation such as remote work.  (*See id.* at 15–21.)  Winchester asserts that
Plaintiff failed to adequately plead an NYSHRL aiding-and-abetting claim against her, (*see id.* at
21), and both Defendants contend that—to the extent the Court dismisses Plaintiff's Title VII
claims—it should decline to exercise supplemental jurisdiction over her NYSHRL claims, (*see
id.* at 22–23).

> 1.  Title VII Claims

> a.  Failure to Accommodate

The Court turns first to Plaintiff's failure-to-accommodate claim under Title VII.  (*See
Am. Compl. ¶¶ 26–33.)

Title VII prohibits discrimination in employment on the basis of religion and requires
employers to reasonably accommodate an employee's religion unless doing so would constitute
an undue hardship.  *See* 42 U.S.C. § 2000e *et seq.*; *Trans World Airlines, Inc. v. Hardison*, 432
U.S. 63, 74 (1977) ("The intent and effect of [including religion in Title VII] was to make it an
unlawful employment practice under § 703(a)(1) for an employer not to make reasonable
accommodations, short of undue hardship, for the religious practices of his employees and
prospective employees.").  "To establish a prima facie case of religious discrimination for failure
to accommodate, Plaintiff must show that (1) [s]he held a 'bona fide religious belief conflicting
with an employment requirement'; (2) [s]he informed [her] employer of this belief; and (3) [s]he
was 'disciplined for failure to comply with the conflicting employment requirement.'"  *Algarin*,

678 F. Supp. 3d at 508 (italics omitted) (quoting *Knight v. Conn. Dep't of Pub. Health*, 275 F.3d

156, 167 (2d Cir. 2001)); *accord Pastor v. Mercy Med. Ctr.*, No. 22-CV-7847, 2024 WL

3029118, at *3 (E.D.N.Y. June 17, 2024); *Cagle v. Weill Cornell Med.*, 680 F. Supp. 3d 428, 435

(S.D.N.Y. 2023).[9] "If the prima facie case is shown, 'the burden then shifts to the employer to

show it could not accommodate the employees' religious beliefs without undue hardship.'"

*Algarin*, 678 F. Supp. 3d at 508 (italics omitted) (quoting *Knight*, 275 F.3d at 167); *see also*

*Cagle*, 680 F. Supp. 3d at 435 ("If the employee is able to make out a prima facie case, the

burden shifts to the employer to show that it either offered the employee a reasonable

accommodation or that doing so would cause an undue burden." (italics omitted) (citing *Baker v.*

*Home Depot*, 445 F.3d 541, 546 (2d Cir. 2006))).[10]

The Court previously held that Plaintiff had adequately pled a prima facie case of

religious discrimination for failure to accommodate. (*See* September 2024 Op. 13–14.)

Defendants do not contest whether Plaintiff has plead a prima facie case. (*See generally* Defs'

Mem.) The Court reaches the same holding because Plaintiff has pled that (1) she "held a bona

fide religious belief conflicting with an employment requirement," *Algarin*, 678 F. Supp. 3d at

508 (quotation marks omitted), (*see* Accommodation Letter 2, 4–5 (asserting that she is a

Messianic Jew and that, based on her religious convictions, she believes that "[v]accines[, such

---

[9] "Title VII defines religion to include 'all aspects of religious observance and practice, as well as belief.'" *Cagle*, 680 F. Supp. 3d at 435 (quoting 42 U.S.C. § 2000e-2(a)(1)).

[10] "Although undue hardship is an affirmative defense, it may be raised on a pre-answer motion to dismiss when the facts establishing it are clear from the face of the complaint." *Dennison v. Bon Secours Charity Health Sys. Med. Grp., P.C.*, No. 22-CV-2929, 2023 WL 3467143, at *5 (S.D.N.Y. May 15, 2023); *see also Haczynska v. Mount Sinai Health Sys., Inc.*, 738 F. Supp. 3d 300, 322 (E.D.N.Y. 2024) (same); *Jackson v. N.Y. State Off. of Mental Health - Pilgrim Psychiatric Ctr.*, No. 23-CV-4164, 2024 WL 1908533, at *6 (E.D.N.Y. May 1, 2024) (same).

as COVID-19 vaccines,] contain blood cells and blood components," including "cells derived from chicks cows, pigs[,] and monkeys[,]" as well as "fetal cells from aborted fetuses" and "viruses and bacteria that pollute and poison the bloodstream[,]")); (2) she "informed" VNSW, through Winchester, "of [her] belief[s,]" *Algarin*, 678 F. Supp. 3d at 508, (*see generally* Accommodation Letter (informing VNSW that getting vaccinated conflicts with Plaintiff's religious views)); and (3) VNSW placed her on administrative leave without pay and ultimately terminated her when she did not receive any COVID-19 vaccine, (*see* Am. Compl. ¶¶ 19–24). Such allegations are "sufficient to plead the final element of the prima facie case of religious discrimination for failure to accommodate." *Jackson*, 2024 WL 1908533, at *6 (quoting *Algarin*, 678 F. Supp. 3d at 509, and collecting cases).

Given that Plaintiff has met her initial pleading burden, "the burden shifts to the employer to show that it either offered the employee a reasonable accommodation or that doing so would cause an undue burden." *Cagle*, 680 F. Supp. 3d at 435. Importantly, the Supreme Court has clarified that, in this context, undue burden is "shown when a burden is substantial in the overall context of an employer's business." *Groff v. DeJoy*, 600 U.S. 447, 468 (2023) (rejecting the "more than de minimis" standard that courts had previously derived from *Trans World Airlines, Inc.*, 432 U.S. 63).

VNSW argues that granting Plaintiff an exemption from the COVID-19 Vaccine Mandate would have imposed an undue burden because it would have been required to violate state law—namely, § 2.61—to do so. That is so because VNSW is a "covered entity" as alleged. Plaintiff falls under § 2.61's definition of "personnel," given that—at minimum—she provided training to various colleagues, including "field staff," *see We The Patriots I*, 17 F.4th at 297 (defining "personnel" as "all persons employed or affiliated with a covered entity, whether paid

or unpaid, including but not limited to employees[] . . . who engage in activities such that if they were infected with COVID-19, they could potentially expose other covered personnel, patients or residents to the disease" (quoting 10 N.Y.C.R.R. § 2.61(a)(2))); (*see also* Accommodation Letter 1); and § 2.61 provided that "covered entities" were to "continuously require personnel to be fully vaccinated against COVID-19," 10 N.Y.C.R.R. § 2.61.

Plaintiff first argues that she was not "personnel" within the meaning § 2.61 because she worked "a wholly administrative position that did not involve interacting with patients nor require face-to-face interaction with any other person." (Am. Compl. ¶ 1; *see also* Pl's Opp'n 8–9.) Her position "consisted entirely of office work" as she "audited medical charts for state and agency compliance and communicated to staff on charting discrepancies via email and telephone." (Am. Compl. ¶ 9.) "For much of the pandemic, Plaintiff and her counterparts at VNSW worked remotely." (*Id.* ¶ 10.) While she was present in-person to "train employees on the new computer program" and "[s]erv[e] on committees[,]" (*id.* ¶ 9 n.4), Plaintiff argues that they are irrelevant because they were "temporary and volunteer activities that were not, in fact, among the duties of her employment," (Pl's Opp'n 9). Second, Plaintiff argues that she was asking for a religious accommodation, not a religious exemption, and that VNSW should have permitted her to work remotely as an accommodation to her religious objection to the COVID-19 Vaccine Mandate. (*See id.* at 19–23.)

The Court is unpersuaded for three reasons. First, Plaintiff falls under the meaning of "personnel" under § 2.61. The touchstone for defining "personnel" under § 2.61 is not whether an activity falls within one's scope of employment, but rather whether an individual "engage[s] in activities such that if they were infected with COVID-19, they could potentially expose other covered personnel, patients or residents to the disease." *See We the Patriots I*, 17 F.4th at 297

(quoting 10 N.Y.C.R.R. § 2.61(a)(2)).  Plaintiff's Accommodation Letter makes clear that she "educat[ed] current and new staff" on various topics; that "[t]he support that [she provided was] not limited to field staff but also extend[ed] to all office staff"; and that she served on "department and agency committees," including as "the scribe" who prepared certain "committee and meeting minutes."  (Accommodation Letter 1.)  Based on the allegations in the Amended Complaint and the exhibits attached, if Plaintiff had been "infected with COVID-19[,]" she could have "potentially expose[d] other covered personnel," such as the "field staff" she trained, "to the disease" regardless of whether her activities were voluntary.  *See Algarin*, 678 F. Supp. 3d at 502–03 (noting that the plaintiff was an IT professional and that he "qualified as 'personnel'" for § 2.61 purposes because he "worked on site . . . with co-workers").

Even if the Court ignores the voluntary activities, Plaintiff is still "personnel" under § 2.61 because her job was not fully remote.  (*See* Am. Compl. ¶ 10 n.5 ("Plaintiff does not recall the precise dates of when she worked remotely, but to the best of her recollection this was everyday for approximately three months in Spring 2020 after the onset of the pandemic.  Upon the return to the office, there was a rotating schedule that had Ms. Greenberg coming into the office half the week and working remotely the other half.").)  Thus, Plaintiff is considered "personnel" under § 2.61 because she worked in the office.  *See Algarin*, 678 F. Supp. 3d at 509 ("[E]ven though plaintiff does not work with patients, plaintiff qualifies as 'personnel' for purposes of Section 2.61 given that he admittedly worked on site . . . with co-workers[.]"); *Bobadilla v. N.Y.C. Health & Hosps. Corp.*, No. 22-CV-10594, 2024 WL 2055463, at *3 (S.D.N.Y. May 8, 2024) ("[Plaintiff] plainly qualified as "personnel" for purposes of Section 2.61, even though [plaintiff] did not work with patients directly."); *Corrales v. Montefiore Medical Center*, No. 22-CV-3219, 2023 WL 2711415, at *7 (S.D.N.Y. March 30, 2023) (finding

14

that a receptionist qualified as "personnel" under the statute because "she worked for a covered entity in an office with other staff members" (internal quotation marks omitted)).

Second, Plaintiff requested a religious exemption, not a religious accommodation. Plaintiff argues that "[a]lthough Ms. Greenberg used the word 'exemption,' her letter was a request for religious accommodation. As a lay person, it was reasonable for her to use the terms 'exemption' and 'accommodation' interchangeably." (Am. Compl. ¶ 12 n.6.) But Plaintiff cites to no authority for why the Court should overlook *repeated* requests for a religious exemption and consider them to be requests for religious accommodation. (*See generally id.*; Pl's Opp'n.) Even if the Court looks beyond the labels, Plaintiff substantively requests a religious exemption, not accommodation. Plaintiff asked to be not subject to the vaccination order because of her religious beliefs, not for an accommodation that would have removed her from the scope of the rule. (*See* Accommodation Letter 1 ("I file this religious exemption for vaccination."); *id.* at 6 ("I cannot take vaccines —it is a betrayal of my faith[.]").) *Compare Kane*, 19 F.4th at 160 n.5 (explaining that exemptions differ from accommodations because the former allows people to be entirely "not subject to" a given rule), *with We the Patriots II*, 17 F.4th at 370 ("[§] 2.61, on its face, does not bar an employer from providing an employee with a reasonable accommodation *that removes the individual from the scope of the Rule*[;] [that is], it may be possible under [§ 2.61] for an employer to *accommodate*—not *exempt*—employees with religious objections, by employing them in a manner that removes them from the Rule's definition of 'personnel.'" (emphases in original) (quotation marks and citations omitted)).

As the Court noted, (*see* September 2024 Op. 15–17), numerous federal courts in New York have consistently dismissed similar Title VII claims against healthcare employers that instituted policies consistent with the COVID-19 Vaccine Mandate on the basis that granting

employees religious exemptions or accommodations would have created an undue hardship on the employer by forcing them to violate § 2.61, *see, e.g.*, *Haczynska*, 738 F. Supp. 3d at 322 (noting that the defendants "would have had to violate state law in order to grant [the p]laintiffs' requested religious exemptions [from the COVID-19 Vaccine Mandate], thereby suffering an undue hardship" and collecting cases (citation omitted)); *Pastor*, 2024 WL 3029118, at *4 ("Plaintiff's requests that [the defendant] allow her to work on site—i.e., her requests to undergo masking, social distancing, and weekly or bi-weekly COVID-19 testing—would have imposed an undue hardship as a matter of law." (citation and quotation marks omitted)); *Addonizio v. Nuvance Health*, No. 23-CV-1582, 2024 WL 2958795, at *7 (S.D.N.Y. June 11, 2024) (stating that "[c]ourts in this Circuit have repeatedly rejected discrimination claims that would require employers to violate [§] 2.61 to accommodate a request for religious exemption or accommodation" and collecting cases); *Kauffman v. N.Y. Presbyterian Hosp.*, No. 23-CV-4964, 2024 WL 2279318, at *6 (S.D.N.Y. May 16, 2024) ("Courts in this Circuit routinely hold that undue hardship exists as a matter of law where an accommodation, including with respect to COVID-19 vaccination, would require the defendant to violate state law, including the [COVID-19 Vaccine] Mandate."), *report and recommendation adopted*, 2024 WL 2944160 (S.D.N.Y. June 10, 2024); *Jackson*, 2024 WL 1908533, at *7 (noting that the defendants had "correctly contend[ed] that [the p]laintiff's requested accommodations that would [have] allow[ed] her to work on site . . . without taking the COVID-19 vaccine would have imposed an undue hardship as a matter of law," because the decision-making defendant "could not have granted th[o]se accommodations without violating [the COVID-19 Vaccine Mandate], exposing itself to potential penalties, and thereby suffering an undue hardship" (internal quotation marks omitted)); *Cagle*, 680 F. Supp. 3d at 436 (likewise collecting "[a] long line of cases in the Southern and

Eastern Districts of New York" that "have uniformly rejected claims that an employer is required by Title VII to accommodate a request for a religious exemption from [the COVID-19 Vaccine Mandate] at the cost of violating [§] 2.61 and thus New York law"); *Algarin*, 678 F. Supp. 3d at 509 ("Courts have repeatedly dismissed Title VII claims brought against healthcare employers with a mandatory COVID-19 vaccination requirement because providing the sought religious exemption would create an undue hardship on the employer who would be in violation of the state rule.").  Additionally, a Second Circuit panel has reached the same conclusion.  *See D'Cunha v. Northwell Health Sys.*, No. 23-476, 2023 WL 7986441, at *2–3 (2d Cir. Nov. 17, 2023) (summary order) (concluding—where the defendant was a "covered entity" and the plaintiff fell under the definition of "personnel" pursuant to the COVID-19 Vaccine Mandate— that the defendant "could not have granted [the plaintiff's] religious-exemption request without violating the [] Mandate, exposing itself to potential penalties, and thereby suffering an undue hardship"); *see also id.* at *3 (noting that the panel's "conclusion [was] consistent with the Supreme Court's clarification of the 'undue hardship' standard in *Groff* because the burden placed on an employer from violating a state law, like the [COVID-19 Vaccine] Mandate in this case, is both 'excessive' and 'unjustifiable'" (quoting *Groff*, 600 U.S. at 469)).[11]  Thus, "[l]ike the defendants in these prior cases, [VNSW] would have suffered an 'undue hardship' if forced

---

[11] "[C]ourts in the Second Circuit have often noted that unpublished opinions and Summary Orders from the Second Circuit Court of Appeals, while not binding, can be instructive to district courts in resolving particular disputes, and also may be seen as highly persuasive and predictive of how the Second Circuit Court of Appeals would decide an issue in the future." *Flores v. Bergtraum*, No. 20-CV-1240, 2022 WL 125372, at *9 n.7 (S.D.N.Y. Jan. 13, 2022) (quoting *Liana Carrier Ltd. v. Pure Biofuels Corp.*, No. 14-CV-3406, 2015 WL 10793422, at *4 (S.D.N.Y. Aug. 14, 2015)); *cf. Brault v. Soc. Sec. Admin., Com'r*, 683 F.3d 443, 450 n.5 (2d Cir. 2012) ("We are, of course, permitted to consider summary orders for their persuasive value, and often draw guidance from them in later cases.").

to grant religious exemptions to Plaintiff[] because [it] would have violated state law."
*Haczynska*, 738 F. Supp. 3d at 322–23.

And apart from the requirements of § 2.61, "there is also the obvious hardship associated with the increased health and safety risk posed to other employees . . . by allowing Plaintiff[] to remain unvaccinated while working at [VNSW's offices], and the risk of civil liability to anyone infected by an unvaccinated employee." *Pastor*, 2024 WL 3029118, at *5 (quoting *Dennison*, 2023 WL 3467143, at *6 n.7, and collecting cases); *see also Beickert v. N.Y.C. Dep't of Educ.*, No. 22-CV-5265, 2023 WL 6214236, at *5 (E.D.N.Y. Sept. 25, 2023) (noting that "it is beyond cavil that safety within any work environment . . . is of absolute importance" and that plaintiff's "unvaccinated presence" would have been an undue burden on defendant by "impos[ing] 'substantial increased costs in relation to the conduct of [defendant's] particular business' by creating a health and safety risk") (quoting *Groff*, 600 U.S. at 470)).

Third, even if Plaintiff had requested a religious accommodation instead of a religious exemption, her claim still fails because she did not request any accommodation like remote work. (*See generally* Am. Compl; Accommodation Letter). Though Plaintiff asserts that an employer is required to "identify and implement a reasonable accommodation," she offers no authority supporting that standard. (Pl's Opp'n 13.) In fact, caselaw undermines her assertion. As the Court noted in its prior Opinion, (*see* September 2024 Op. 19–20), while employers are permitted to "provid[e] an employee with a reasonable accommodation that remove[d] the individual from the scope of [§ 2.61,]" *We the Patriots I*, 17 F.4th at 292, courts that have allowed Title VII failure-to-accommodate claims involving remote-work requests to survive motions to dismiss have consistently noted that the plaintiffs had, in fact, *requested* such an accommodation, and they have certainly not determined that baldly asserting that remote work

was a theoretical possibility for the plaintiff was sufficient to survive a motion to dismiss, *see Parks v. Montefiore Med. Ctr.*, No. 23-CV-4945, 2025 WL 370830, at *4 (S.D.N.Y. Feb. 3, 2025) (dismissing an amended complaint with prejudice because it failed to allege "any request for an accommodation *that he made*" which would have "removed him from the scope of the vaccine mandate" (emphasis in original)), *appeal pending*, No. 25-811 (2d Cir. Apr. 8, 2025); *Dennison*, 2023 WL 3467143, at *6 (dismissing Title VII claim on undue hardship grounds where the plaintiffs "did not request remote work or some other arrangement that would have removed them from [§ 2.61's] definition of 'personnel'"); *cf. Jackson*, 2024 WL 1908533, at *8 (denying a motion to dismiss where the plaintiff requested "an entirely 'remote' work schedule" and had alleged that "she performed 'administrative work' that was entirely 'computer based' and that [the defendant] allowed her to do that work remotely for over one year before it required [her] to return to in-person work" (citation omitted)); *Grimes v. N.Y. & Presbyterian Hosp.*, No. 23-CV-652, 2024 WL 816208, at *5–6 (S.D.N.Y. Feb. 26, 2024) (permitting a Title VII religious discrimination claim to proceed in the vaccine mandate context where the plaintiff had requested, and was denied, a telework accommodation when the plaintiff was already a remote employee). Here, even accepting all her allegations as true, Plaintiff never requested that VNSW permit her to transition to an entirely remote schedule.  (*See generally* Am. Compl.; Accommodation Letter.)

Accordingly, the Motion is granted as against Plaintiff's Title VII failure-to-accommodate claim against VNSW.

### 2.  NYSHRL Claims

The Court now turns to Plaintiff's NYSHRL claims.  (*See* Am. Compl ¶¶ 34–38.)  In light of the Court's dismissal of Plaintiff's federal claims under Title VII, the Court declines to

exercise supplemental jurisdiction over her state-law NYSHRL claims. *See* 28 U.S.C.

§ 1367(c)(3) ("[D]istrict courts may decline to exercise supplemental jurisdiction over a claim

. . . [if] the district court has dismissed all claims over which it has original jurisdiction . . . .").

"Once a district court's discretion is triggered under § 1367(c)(3), it balances the

traditional values of judicial economy, convenience, fairness, and comity, in deciding whether to

exercise jurisdiction." *Kolari v. N.Y.-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006)

(citation and quotation marks omitted); *accord Gibson v. Mount Vernon Montefiore Hosp. Exec.*

*Dir.*, No. 22-CV-4213, 2024 WL 1217528, at *13 (S.D.N.Y. Mar. 19, 2024). "[I]n the usual case

in which all federal-law claims are eliminated before trial, the balance of factors to be considered

. . . will point toward declining to exercise jurisdiction over the remaining state-law claims."

*Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988); *see also Marcus v. AT&T Corp.*,

138 F.3d 46, 57 (2d Cir. 1998) ("In general, where the federal claims are dismissed before trial,

the state claims should be dismissed as well."); *Pitchell v. Callan*, 13 F.3d 545, 547 (2d Cir.

1994) ("It is axiomatic that when all federal claims are eliminated prior to trial, a court should

decline to exercise jurisdiction over any remaining pendent state claims." (quotation marks

omitted)).

The Court concludes that there is nothing that distinguishes this Action from "the usual

case." *See Cohill*, 484 U.S. at 350 n.7. Plaintiff's federal claims have all been dismissed, *see*

*Dellutri v. Village of Elmsford*, 895 F. Supp. 2d 555, 575 (S.D.N.Y. 2012) (declining to exercise

supplemental jurisdiction where "th[e] case remains in its initial stages, and the [p]arties have not

yet proceeded to discovery"); *Middleton v. United States*, No. 10-CV-6057, 2012 WL 394559, at

*1 (E.D.N.Y. Feb. 7, 2012) (declining to exercise supplemental jurisdiction because no federal

claims survived a motion to dismiss), and none of the factors that the Supreme Court enunciated

in *Cohill*—"judicial economy, convenience, fairness, [or] comity"—counsels against such dismissal, 484 U.S. at 350 n.7.  Thus, Plaintiff's NYSHRL claims against VNSW and Winchester are dismissed.

## III.  Conclusion

For the foregoing reasons, the Court grants Defendants' Motion.  Plaintiff has requested that if the Court grants Defendants' Motion, this Court should grant Plaintiff leave to file a Second Amended Complaint.  (*See* Pl's Opp'n 24.)  Leave to amend a complaint should be freely given "when justice so requires."  Fed. R. Civ. P. 15(a)(2).  "[I]t is within the sound discretion of the district court to grant or deny leave to amend."  *Kim v. Kimm*, 884 F.3d 98, 105 (2d Cir. 2018) (internal quotation marks and citation omitted).  "Leave to amend, though liberally granted, may properly be denied for . . . 'repeated failure to cure deficiencies by amendments previously allowed' . . . [or] 'futility of amendment,'" among other reasons.  *Ruotolo v. City of New York*, 514 F.3d 184, 191 (2d Cir. 2008) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

Here, Plaintiff has already amended her complaint.  (*See generally* Am. Compl.) "Generally, a plaintiff's failure to fix deficiencies in the previous pleading, after being provided notice of them, is alone sufficient ground to deny leave to amend."  *Turnipseed v. Simply Orange Juice Co.*, No. 20-CV-8677, 2022 WL 657413, at *8 (S.D.N.Y. Mar. 4, 2022) (collecting cases); *see also Nat'l Credit Union Admin. Bd. v. U.S. Bank Nat'l Ass'n*, 898 F.3d 243, 257–58 (2d Cir. 2018) ("When a plaintiff was aware of the deficiencies in his complaint when he first amended, he clearly has no right to a second amendment even if the proposed second amended complaint in fact cures the defects of the first.  Simply put, a busy district court need not allow itself to be imposed upon by the presentation of theories seriatim." (italics omitted)).

Moreover, Plaintiff has failed to otherwise suggest that she is "in possession of facts that would cure the deficiencies that Defendants highlighted in the instant [M]otion and that the Court highlighted in this [O]pinion." *Turnipseed*, 2022 WL 657413, at *8; *see also TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 505 (2d Cir. 2014) (plaintiff need not be given leave to amend if the plaintiff fails to specify how amendment would cure the pleading deficiencies in the complaint).

Because this is the second explicit adjudication of Plaintiff's claims on the merits, the Amended Complaint is dismissed with prejudice. *See Denny v. Barber*, 576 F.2d 465, 471 (2d Cir. 1978) (holding that the plaintiff was not entitled to "a third go-around"); *Melvin v. County of Westchester*, No. 14-CV-2995, 2016 WL 1254394, at *24 n.19 (S.D.N.Y. Mar. 29, 2016) (granting a motion to dismiss with prejudice where "[the] [p]laintiff has already had two bites at the apple[,] and they have proven fruitless" (internal quotation marks and citation omitted)).

The Clerk of Court is respectfully directed to terminate the pending Motion, (Dkt. No. 32), and close this case.

SO ORDERED.

Dated:    September 16, 2025
          White Plains, New York

_____
        KENNETH M. KARAS
      United States District Judge